# IN THE SUPREME COURT OF IOWA

No. 18–1737

Submitted November 18, 2020—Filed April 30, 2021

**STATE OF IOWA,**

> Appellee,

vs.

**MARIO GOODSON,**

> Appellant.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Black Hawk County, Joel Dalrymple (trial and posttrial motions), Linda M. Fangman (enhancement), and George L. Stigler (sentencing), Judges.

The defendant seeks further review from the court of appeals decision affirming his convictions of first-degree burglary, third-degree sexual abuse, domestic abuse assault causing bodily injury, and operating a vehicle without its owner's consent, arguing that the district court improperly admitted prior act evidence and that his convictions of first-degree burglary and third-degree sexual abuse should merge. **DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT AFFIRMED, SENTENCE AFFIRMED IN PART AND REVERSED IN PART, AND CASE REMANDED FOR RESENTENCING.**

Appel, J., delivered the opinion of the court, in which all justices joined.

Martha J. Lucey, State Appellate Defender, and Vidhya K. Reddy, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Louis S. Sloven, Assistant Attorney General, Brian Williams, County Attorney, and Israel Kodiaga and Michelle Wagner, Assistant County Attorneys, for appellee.

**APPEL, Justice.**

In this case, Mario Goodson appeals his conviction following a jury trial on charges of first-degree burglary, in violation of Iowa Code section 713.3 (2016); operating a motor vehicle without its owner's consent, in violation of Iowa Code section 714.7; domestic abuse assault causing bodily injury, in violation of Iowa Code section 708.2A(2)(*b*); and third-degree sexual abuse, in violation of Iowa Code section 709.4(1)(*a*).

The criminal charges arose from an altercation on December 23, 2016, between Goodson and his former partner, A.T., at A.T.'s home. During the trial the State introduced evidence of Goodson's prior acts. The evidence included a neighbor's testimony about a previous altercation between Goodson and A.T., a videotape of an altercation between Goodson and A.T. outside of A.T.'s place of employment, and testimony about an arrest warrant issued for Goodson as a result of the altercation outside of A.T.'s place of employment.

Goodson claims on appeal that prior act evidence was improperly admitted solely to show propensity. He also asserts that his conviction of first-degree burglary and third-degree sexual abuse should merge. In addition, Goodson claims the trial judge should have recused himself from both the trial and the hearings on posttrial motions. Finally, he argues his sentence is illegal because it specifies a duration for sex offender registry obligations.

For the reasons stated below, we affirm Goodson's convictions, reverse the illegal portion of Goodson's sentence, and remand for resentencing.

## I. Background Facts and Proceedings.

**A. Introduction.** Goodson and A.T. began a romantic relationship sometime around November 2014. The relationship broke up on three

occasions but the parties got back together. The two lived together in A.T.'s residence during some portions of the relationship.

In early summer 2015, Goodson and A.T. broke off their relationship and Goodson moved out. But, later that summer, when A.T. found out she was pregnant with Goodson's child, Goodson moved back to live with A.T. Their child was born in March 2016.

In July, Goodson once again left the residence, but moved back in September. On December 8, a conflict between Goodson and A.T. occurred at A.T.'s work. On December 23, a second altercation occurred at A.T.'s home, the second altercation led to the criminal charges in this case.

The State brought four criminal charges against Goodson: first-degree burglary in violation of Iowa Code section 713.3 (2016), operating a motor vehicle without its owner's consent in violation of Iowa Code section 714.7, domestic abuse assault causing bodily injury in violation of Iowa Code section 708.2A(2)(*b*), and third-degree sexual abuse in violation of Iowa Code section 709.4(1). A jury returned a verdict of guilty on all charges. The sentencing court imposed terms of incarceration on each count and ran them concurrently resulting in a twenty-five-year prison term with an eighty-five percent mandatory minimum.

**B. Proceedings Before the District Court.**

1. *Introduction.* At trial, Goodson and A.T. presented contrasting stories about what happened on December 23, 2016, and the events leading up to it. The central issue for the jury was whether to believe the version of the event given by A.T. or by Goodson.

2. *A.T.'s version of the December 23 events at trial.* A.T. testified she returned home on December 23, and as she opened the door, Goodson was in the doorway and pulled her into the residence. A.T. stated that Goodson was agitated, threatened her, and hit her several times when she

was in the bathroom, breaking a mirror. A.T. asserted she attempted to escape through the front door, but Goodson blocked the door with a coffee table. A.T. said she attempted to retrieve a mace gun that she had purchased for protection, but Goodson was able to prevent her from utilizing it. However, the mace gun hit the ground and exploded, spraying onto A.T., Goodson, and the baby.

A.T. said Goodson forced her into the basement, seized her phone, and became angry about text messages she had sent to other men. A.T. declared that she was eventually able to regain control of her phone and smashed it on the concrete floor, which created momentary calm. Then, A.T. said she and the baby showered to remove the mace; Goodson eventually joined. A.T. said she and her baby went to take a nap while Goodson cleaned up the house.

A.T. said Goodson came into the room where she and the baby were napping and again became angry about the other men. A.T. testified that Goodson then sexually assaulted her. At some point during the altercation, Goodson's leg was injured, and he left to get his leg examined by a doctor. A.T. said Goodson took her car without her permission. After Goodson left, A.T. said she was able to call the police and the police came to investigate.

3. *Goodson's version of the December 23 events at trial.* Goodson had a different story at trial than A.T. According to Goodson, he was in A.T.'s home packing up some of his clothing to take with him to a job interview in Las Vegas. Goodson testified that he previously interviewed for a job in Las Vegas and discussed moving to Las Vegas with A.T. and each of their children. Goodson said A.T. was not interested in the idea of moving and became angry whenever Goodson brought up the topic. Goodson testified that when A.T. returned home, she went down to the

basement and Goodson told A.T. that he was packing some clothes for another job interview in Las Vegas, to which A.T. responded with frustration.

Goodson said they both went upstairs to the bathroom to pack toiletries and then A.T. started an argument. Goodson contends that A.T. said she did not need to have a relationship with Goodson, and showed Goodson conversations on her phone with other men with whom she had relationships. Goodson admitted he got "pissed" and punched the bathroom mirror but did not intentionally hit A.T. He conceded, however, that he may have hit her by accident.

Goodson testified that A.T. then attempted to get a mace gun because she was angry with him, and as he wrestled the gun away from her, the gun exploded. After the explosion, Goodson said he was concerned about the baby and that all three should shower to remove the mace. Goodson then said he reconciled with A.T. and they ultimately had consensual sex. Goodson said that he went to the doctor to get his leg examined, and while he was at the doctor, he received a phone call from his mother telling him not to return to A.T.'s house because the police had been called.

4. *Admission of prior acts evidence.* Over the objection of Goodson, the State offered and the district court admitted testimonial evidence of Goodson's prior acts to support A.T.'s account of the December 23 events and to establish a pattern of abusive behavior by Goodson towards A.T. The district court admitted evidence regarding two prior events. First, the district court admitted evidence of a confrontation between A.T. and Goodson that occurred on December 8, roughly two weeks prior to December 23. Second, the district court admitted evidence from a

neighbor of A.T.'s who testified that he saw Goodson punch A.T. in the face after an argument that occurred several months prior to December 23.

Regarding the December 8 incident, A.T. testified that she had told Goodson by text or phone of a relationship she was forming with another man. A.T. testified that after she told Goodson of the relationship, he said that he was going to kill her. A.T. said she was concerned by Goodson's statements and believed Goodson might come to her work to confront her. A.T. said she looked into the parking lot and did not see Goodson's car, so she left. A.T. said that as she walked to her car, she heard an engine and turned to see Goodson's mother's car. A.T. then testified that Goodson jumped out of the car, ran after her, and threatened her—eventually forcing her into his car. Within the car, A.T. said she and Goodson had an argument in which Goodson was verbally and physically abusive towards her. A.T. said she was able to convince Goodson to let her leave his car, and after she left, she went to stay at her mother's house. A.T. said she filed a police report about the altercation and was careful over the next several weeks to make sure she did not run into Goodson. A.T. said she primarily stayed at her mother's house throughout the time period.

In addition to the testimony of A.T., the district court admitted other evidence related to the December 8 incident. The district court admitted a video of the December 8 events. The district court further admitted a 911 phone called made by A.T. on December 23 where she recounted that an arrest warrant had been issued for Goodson after the December 8 incident.

Goodson has a different version of the December 8 events. According to Goodson, the altercation was misconstrued. Goodson testified that he simply came to talk with A.T. about their relationship on December 8. He asserted there was no threatening or assaultive activity.

The district court also admitted testimony from a neighbor of A.T., one Jacob Miller. According to Miller, several months prior to December 23, he observed Goodson punch A.T. in the face after a verbal argument.

5. *Posttrial motions.* After trial, Goodson filed a motion for a new trial alleging an appearance of impropriety because of the trial judge's interaction with several jurors. The judge denied Goodson's motion. Four months later, Goodson filed a second motion for a new trial alleging that the trial judge had been the prosecutor for Goodson's previous sexual abuse conviction and requesting a new trial with a different judge. The judge denied Goodson's second motion.

At the hearing to determine whether a sentencing enhancement would apply under Iowa Code section 901A.2(3) for Goodson's prior sexual abuse conviction, a different judge determined the enhancement would apply. A third judge presided over Goodson's sentencing hearing.

**C. Court of Appeals Decision.** The court of appeals affirmed Goodson's convictions. According to the court of appeals, the district court did not abuse its discretion in admitting any prior act evidence. The court of appeals further held that the offenses of first-degree burglary and third-degree sexual abuse do not merge. On the issue of judicial recusal, the court of appeals decided the issue was not preserved. Finally, the court of appeals held that a portion of Goodson's sentence was illegal and remanded the case to the district court for resentencing of the illegal portion.

**II. Standard of Review.**

"We review rulings on the admission of evidence of prior bad acts for an abuse of discretion." *State v. Reyes*, 744 N.W.2d 95, 99 (Iowa 2008). We reverse a district court's admission as an abuse of discretion if the

grounds or reasoning for admission were "clearly untenable or clearly unreasonable." *State v. Plain*, 898 N.W.2d 801, 811 (Iowa 2017). We review the failure to merge convictions required by statute for correction of errors at law. *State v. Johnson*, 950 N.W.2d 21, 23 (Iowa 2020). We review any constitutional double jeopardy claim de novo. *Id.*

### III. Discussion.

### A. The Admissibility of Prior Act Evidence.

1. *Positions of the parties.* Goodson claims the district court erred in allowing admission of evidence related to the December 8 altercation, the mention of the arrest warrant related to it, and Miller's testimony about Goodson punching A.T. in the face several months prior to December 23. Although there was no contemporaneous objection at trial, Goodson now objects to testimony from A.T. outlining the history of their stormy relationship.[1] Goodson claims that the evidence was used by the State to show that Goodson was generally a bad person and would act in conformity with that bad character during the December 23 incident. Goodson recognizes that under Iowa Rule of Evidence 5.404(*b*)(2), other act evidence might be relevant on a significant issue such as intent. *State v. Sullivan*, 679 N.W.2d 19, 25 (Iowa 2004). Goodson argues, however, that intent was not really an issue in the case as he admitted he was "pissed" and that his actions were not accidental.

Goodson also claims that the prior acts evidence was not supported by "clear proof." Although Goodson concedes that under our caselaw,

---

[1]Goodson invites us to address the unpreserved issue on this direct appeal under the rubric of ineffective assistance of counsel. Under S.F. 589, however, ineffective-assistance-of-counsel claims cannot be decided on direct appeal. 2019 Iowa Acts ch. 140, § 31 (codified at Iowa Code § 814.7). In *State v. Macke*, we determined that S.F. 589 did not retroactively apply prior to its effective date of July 1, 2019. 933 N.W.2d 226, 231, 236 (Iowa 2019). Since the district court's judgment occurred on October 4, 2018, prior to the effective date of S.F. 589, S.F. 589 does not apply and we may address the ineffective-assistance-of-counsel issue on direct appeal.

direct testimony from one witness may amount to clear proof, *State v. Richards*, 879 N.W.2d 140, 152 (Iowa 2016), he argues that in this case the evidence was heavily disputed and thus should have been excluded.

Even if the evidence was arguably relevant, Goodson argues that the probative value was substantially outweighed by the danger of unfair prejudice. He cites *Richards* for the proposition that propensity evidence may encourage juries to punish the defendant because of his past conduct rather than on evidence related to the crime. *Id.* In pressing his argument, Goodson notes that juries are far more susceptible than judges in bench trials to deciding a case based on an improper basis. *State v. Taylor*, 689 N.W.2d 116, 130 (Iowa 2004).

Goodson further asserts that the district court did not properly limit the scope of the prior act evidence. In particular, Goodson argues that the evidence regarding the December 8 incident included a video that was played, in whole or in part, several times for the jury. Goodson notes that the district court did not provide the jury with a cautionary instruction regarding the use of the evidence.

Finally, Goodson claims he was prejudiced by the introduction of the prior acts evidence. He asserts that in light of the conflicting testimony at trial, confidence in the jury verdict is undermined because of the improper admission of the prior acts evidence.

The State recognizes that the evidence it offered regarding prior acts cannot be used solely to show propensity. *Id.* at 123 (citing *State v. Castaneda*, 621 N.W.2d 435, 440 (Iowa 2001) (en banc)). But the State insists the use of the prior acts evidence was not to demonstrate general propensity. According to the State, the evidence was relevant to show Goodson had specific intent to assault A.T. Further, according to the State, the evidence was relevant to show motive. In particular, the State

observes that "domestic violence is a pattern of behavior, with each episode connected to the others." *State v. Richards*, 809 N.W.2d 80, 93 (Iowa 2012) (quoting *Taylor*, 689 N.W.2d at 129 n.6). The evidence, according to the State, was not used to show that Goodson "was a violent man generally" but only that he was violent toward A.T. specifically. *Richards*, 809 N.W.2d at 93–94. The State also argues the evidence was relevant on the question of whether the sex between Goodson and A.T. on December 23 was consensual or coerced.

On the issue of "clear proof," the State observes that the mere fact that the matters are disputed does not prevent admission of the prior acts evidence. The State emphasizes that on the issue of clear proof, there is no "require[ment] that the prior act be established beyond a reasonable doubt, nor is corroboration necessary" when a witness directly testifies about prior events. *Taylor*, 689 N.W.2d at 130.

2. *Framework for admission of prior acts evidence.* The admission of the evidence is governed by Iowa Rule of Evidence 5.404(*b*)(1). Under the rule, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." The rule further provides, however, that prior acts "evidence may be admissible for another purpose such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* r. 5.404(*b*)(2).

We have analyzed the admissibility of prior acts evidence using a three-step approach. In *Richards*, we summarized the three-step approach:

> (1) "the evidence must be relevant and material to a legitimate issue in the case other than a general propensity to commit wrongful acts"; (2) "there must be clear proof the individual

against whom the evidence is offered committed the bad act or crime"; and (3) if the first two prongs are satisfied, "the court must then decide if [the evidence's] probative value is substantially outweighed by the danger of unfair prejudice to the defendant."

*Richards*, 879 N.W.2d at 145 (alteration in original) (quoting *Sullivan*, 679 N.W.2d at 25).

We considered the question of the admission of prior act evidence in a case involving domestic disputes in *State v. Taylor*. 689 N.W.2d at 120–30. In *Taylor*, we determined that in order for the evidence of prior domestic abuse to be admissible, the evidence "must be probative of 'some fact or element in issue other than the defendant's criminal disposition.' " *Id.* at 123 (quoting *Castaneda*, 621 N.W.2d at 440). The *Taylor* court held that evidence of prior conduct by a defendant against the same victim as the alleged crime may demonstrate motive and intent. *Id.* at 125 ("[P]rior conduct directed to the victim of a crime, whether loving or violent, reveals the emotional relationship between the defendant and the victim and is highly probative of the defendant's probable motivation and intent in subsequent situations.").

Similarly, in *State v. Rodriquez*, we concluded that evidence of prior abuse by a defendant against the victim was admissible when the defendant was charged with murder, kidnaping and assault against his girlfriend (the same victim as the prior abuse) because "prior intentional, violent acts towards the victim . . . [made] it more probable that [the defendant] intended to cause [the victim] serious injury" on the specific day of the crimes for which he was being charged. 636 N.W.2d 234, 242 (Iowa 2001).

If there is no dispute such as intent or motive, then the primary "relevancy of [prior acts] is to show the defendant's criminal disposition or propensity to commit the very crime for which the defendant is on trial."

*Richards*, 879 N.W.2d at 147 (quoting *State v. Henderson*, 696 N.W.2d 5, 16 (Iowa 2005) (Lavorato, C.J., concurring specially)). When confronting the possibility of propensity inferences from evidence of violent acts, we look to whether the evidence establishes "not that [a defendant is] a violent man generally, but rather [whether a defendant is] explosive toward [the victim] specifically." *Richards*, 809 N.W.2d at 94.

*Taylor* also provides guidance on the second step for determining whether clear proof exists that the individual committed the prior act. "[I]t is not required that the prior act be established beyond a reasonable doubt, nor is corroboration necessary"; instead, all that is required is "sufficient proof to 'prevent the jury from engaging in speculation or drawing inferences based on mere suspicion.' " *Taylor*, 689 N.W.2d at 130 (quoting *State v. Brown*, 569 N.W.2d 113, 117 (Iowa 1997)). "[A] victim's testimony, standing alone, satisfies the requirement of clear proof." *State v. Jones*, 464 N.W.2d 241, 243 (Iowa 1990).

Finally, *Taylor* provides guidance on the third step for whether the unfair prejudice of the evidence substantially outweighs its probative value. To analyze the balancing, *Taylor* provides,

> [T]he court should consider the need for the evidence in light of the issues and the other evidence available to the prosecution, whether there is clear proof the defendant committed the prior bad acts, the strength or weakness of the evidence on the relevant issue, and the degree to which the fact finder will be prompted to decide the case on an improper basis.

*Taylor*, 689 N.W.2d at 124.

In *Richards*, the court acknowledged that "juries would probably not like someone whom they conclude has repeatedly assaulted a significant other and therefore might develop a desire to punish." 879 N.W.2d at 152. And that a jury trial means that "the fact finder is more susceptible to

deciding the case on an improper basis." *Id.*; *see also Taylor*, 689 N.W.2d at 130 ("Clearly the likelihood of an improper use of the evidence is reduced by the fact that the present case was tried to the court."). Yet the caselaw clearly permits the admission of prior acts if relevant to a noncharacter issue and if the relevancy of the evidence is *substantially* outweighed by prejudice to the defendant. *See, e.g., Richards*, 879 N.W.2d at 145; *State v. Mitchell*, 633 N.W.2d 295, 299 (Iowa 2001).

3. *Application of prior acts framework.* The battle over the narrative in this case was whether Goodson and A.T. were parents and former lovers who had their struggles but generally got along, or whether Goodson had turned so bitter against A.T. in light of their failed relationship that he broke into her home without her permission and physically and sexually assaulted her. The nature of the relationship between A.T. and Goodson was critical in determining the motive for Goodson entering A.T.'s home, whether he entered without permission, and whether he entered the house with intent to assault A.T.

Importantly, the prior act evidence did not simply show that Goodson had bad character traits. Instead, the evidence specifically focused on the nature of the relationship between A.T. and Goodson and was clearly connected to factual issues to be determined by the jury at trial. While Goodson may have "stipulated" to being "pissed off," the issue at trial was not simply whether he was upset or angry. Instead, the jury was asked to determine whether he intentionally broke into A.T.'s house with intent to assault her. Goodson certainly did not concede he intended to commit the acts with which he was criminally charged. *See Richards*, 809 N.W.2d at 94–95.

Goodson and A.T. offered the jury highly conflicting versions of the events on December 23. The prior acts evidence was relevant to show what

motivated Goodson on that day. The district court properly admitted the evidence because it helped to "adequately frame the nature of the parties' relationship." Goodson claimed to be in the home with A.T.'s permission and that they engaged in consensual sex. A.T. told a much different story. Surely the evidence showing the contentious nature of the relationship between A.T. and Goodson was relevant on the question of whose story to believe. We thus reject Goodson's argument that the admission of the prior acts evidence was an impermissible effort designed generally to show bad character. It was specific evidence designed to show the nature of the relationship between A.T. and Goodson that had direct relevance to determining what happened on December 23 at A.T.'s home.

We next consider the issue of clear proof. A.T. testified about the various pieces of evidence regarding the December 8 incident and said Goodson committed the acts. The content of the video is self-proving in regard to some interaction taking place between A.T. and Goodson on December 8. As for Miller's testimony about observing Goodson punch A.T. several months before December, the fact that Miller, a third-party witness with nothing to gain, testified under oath about a concrete and particular event is enough to provide sufficient proof to the jury that Goodson actually punched A.T. To add further proof, A.T. testified to remembering the specific event described by Miller.

Goodson argues that even if the evidence was otherwise admissible, it should have been excluded by the district court because its probative value was substantially outweighed by the prejudice to Goodson. We do not agree. As noted above, the evidence helps to set the stage for the antagonistic relationship between Goodson and A.T., and eliminates the necessity of the jury to conduct a pure "he said, she said test" of credibility. In cases with conflicting direct testimony, it is crucial to have triangulating

evidence to resolve the issue. We cannot say that the district court abused its discretion by concluding that the relevance of the testimony was not substantially outweighed by its prejudicial effect.

Last, Goodson claims the district court should have limited the scope of the prior acts evidence. The evidence that was admitted focused on the combative relationship between A.T. and Goodson. The December 8 incident was described in detail and included a video from a security camera. But aside from the detail, Goodson does not identify any prejudicial collateral matters that improperly came in through the back door. We see no reversible error here.

For all the above reasons, we reject Goodson's claim that the district court abused its discretion in admitting evidence of prior acts in this case.

**B. Merger Doctrine.**

1. *Introduction.* Goodson was charged, convicted, and sentenced for four crimes. Two of the crimes, first-degree burglary and third-degree sexual abuse, have overlapping elements. Goodson claims because of the overlapping elements of first-degree burglary and third-degree sexual abuse, the crimes should merge under Iowa Code section 701.9 and the Double Jeopardy Clause of the United States Constitution. As a result, Goodson argues that his conviction for third-degree sexual abuse should merge with his conviction on first-degree burglary.[2]

2. *Positions of the parties.* Goodson begins his merger argument by focusing on the jury instructions in this case. Under Jury Instruction

---

[2]The State argues that because Goodson did not raise the issue of merger or double jeopardy at trial, the issue is waived. However, we have held that a "district court's failure to merge convictions as required by statute results in an illegal sentence. Such claims may be raised at any time." *State v. Love*, 858 N.W.2d 721, 723 (Iowa 2015). The State suggests in this case that because special verdicts would have demonstrated whether the jury found two separate crimes in this case, Goodson must seek special verdicts or his merger claim is waived. In light of our ultimate disposition, we need not address the State's preservation argument regarding Goodson seeking a special verdict.

No. 19, the jury was instructed that in order to prove first-degree burglary, the state must prove:

> 6. During the incident:
>
> a. The defendant intentionally or recklessly inflicted bodily injury as defined in instruction 30 . . . , or
>
> b. The defendant performed or participated in a sex act . . . which would constitute sexual abuse as defined in instruction 36.

Because alternative 6(b) of the first-degree burglary instruction contains all the elements of third-degree sexual abuse, Goodson asserts that the two crimes should merge under the same elements test of *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 182 (1932).

Goodson recognizes that even where the elements are the same under *Blockburger*, merger does not occur if there is an indication that the legislature intended multiple punishments. *See State v. Lewis*, 514 N.W.2d 63, 69 (Iowa 1994). Goodson argues that there is no such indication here. He notes that in *State v. Anderson*, we found that the crime of assault with intent to commit sexual abuse merged with first-degree burglary. 565 N.W.2d 340, 344 (Iowa 1997). Absent a finding of legislative intent to the contrary, Goodson argues, the crime of sexual abuse in the third degree merges with first-degree burglary.

The State advances two distinct counter arguments. First, the State points out that in this case, it is clear that the jury found two separate crimes. The State notes that Goodson was found guilty of the crime of domestic abuse assault causing bodily injury as well as the crime of sexual abuse in the third degree. By finding Goodson guilty of the crime of domestic abuse assault, the State argues, we can be confident that jurors found Goodson committed a distinct criminal act to satisfy paragraph 6 of

the first-degree burglary instruction that was independent of his act of sexual abuse.

Second, however, the State argues that even if the same elements test of *Blockburger* have been met, the crimes of first-degree burglary and sexual assault in the third degree should not merge because there is evidence that the legislature did not intend this result. Specifically, the State points to statutes providing for enhanced penalties for subsequent sex crimes. Iowa Code § 901A.2; *id.* § 902.14. According to the State, the possibility of enhanced punishment for sexual abuse crimes demonstrates a legislative intent to permit multiple punishment in all cases. If the crimes of first-degree burglary and third-degree sexual abuse merged, the reach of the enhanced penalties would be lessened—contrary to legislative intent. Further, the State points to lifetime special sentences under Iowa Code section 903B.1 which applies to "class 'C' felony or greater offense under [Iowa Code] chapter 709." The availability of lifetime special sentences, which is viewed as additional punishment, *State v. Lathrop*, 781 N.W.2d 288, 294–97 (Iowa 2010), would be undermined if sexual abuse in the third degree merged with first-degree burglary.

3. *Discussion of the merits.* Iowa's merger statute states: "No person shall be convicted of a public offense which is necessarily included in another public offense of which the person is convicted." Iowa Code § 701.9. The statute has the effect of codifying constitutional double jeopardy protections. *See, e.g., State v. Halliburton*, 539 N.W.2d 339, 344 (Iowa 1995); *State v. Gallup*, 500 N.W.2d 437, 445 (Iowa 1993). However, when the legislature intends double punishment, then the Double Jeopardy Clause, and therefore the merger statute, are not applicable. *See, e.g., Johnson*, 950 N.W.2d at 23–24; *State v. West*, 924 N.W.2d 502, 512 (Iowa 2019) ("[T]he question of whether an offense is necessarily

included in a greater offense is a question of legislative intent."); *see also Gamble v. United States*, 587 U.S. ___, ___, 139 S. Ct. 1960, 1965 (2019) (stating that double jeopardy "protects individuals from being twice put in jeopardy 'for the same *offence*,' not for the same *conduct* or *actions*" (quoting *Grady v. Corbin*, 495 U.S. 508, 529, 110 S. Ct. 2084, 2097 (1990) (Scalia, J., dissenting))).

In order to determine legislative intent for double punishment, we use a two-step analysis. *Johnson*, 950 N.W.2d at 24–25. First, we conduct a *Blockburger*-type elements test which looks at "the elements of the two offenses to determine whether it is possible to commit the greater offense without also committing the lesser offense." *Halliburton* 539 N.W.2d at 344; *see also Blockburger*, 284 U.S. at 304, 52 S. Ct. at 182. "If the greater offense is defined alternatively and the State charges both alternatives, the test for included offenses must be applied to each alternative." *State v. Hickman*, 623 N.W.2d 847, 851 (Iowa 2001) (en banc). Therefore, "[w]hen alternatives are present and one alternative requires merger, merger is required if it is impossible to determine which alternative the jury used." *Bryson v. State*, 886 N.W.2d 860, 864 (Iowa Ct. App. 2016).

The second step is "whether the legislature intended multiple punishments for both offenses." *Halliburton*, 539 N.W.2d at 344. In *State v. West*, we decided "where the greater offense has a penalty that is not in excess of the lesser included offense, a legislative intent to permit multiple punishments arises. Otherwise, there would be little point to the greater offense." 924 N.W.2d at 511.

We have further analyzed legislative intent for double punishment of offenses that carry enhancements for subsequent offenses. Most recently in *State v. Johnson* we determined merger does not occur with the offenses of marijuana possession and eluding with possession of

marijuana because merger would thwart the legislative intent of enhancement for subsequent possession offenses. 950 N.W.2d at 25–27. Similarly, the court of appeals in *State v. Rice* determined that merger of eluding and OWI "would thwart the legislative design of [the OWI statute] and its subparts, which detail a number of offense-specific sentencing provisions, including mandatory minimums and subsequent-offense enhancements." 661 N.W.2d 550, 552 (Iowa Ct. App. 2003).

Our first step in determining whether third-degree sexual abuse merges with first-degree burglary is whether it is possible to commit a first-degree burglary offense without committing third-degree sexual abuse. First-degree burglary occurs when a person commits a burglary in a structure where at least one person is present and one of several circumstances apply during the commission of the burglary including if "[t]he person intentionally or recklessly inflicts bodily injury on any person" or the person commits a sexual abuse offense. *See* Iowa Code § 713.3. So, sexual abuse is a sufficient, but not a necessary requirement for committing first-degree burglary.

The jury instructions offered each of these alternative routes to a first-degree burglary conviction.[3] Therefore, we must determine whether it is possible to ascertain which alternative the jury relied upon for its first-degree burglary conviction. The jury could rely on the sexual abuse alternative, for which it convicted Goodson on the separate charge.

---

[3]6. During the incident:

    a. The defendant intentionally or recklessly inflicted bodily injury as defined in instruction 30 on [A.T.], or

    b. The defendant performed or participated in a sex act as defined in instruction 38 with [A.T.] which would constitute sexual abuse as defined in instruction 36.

However, it is not clear that the jury found the intentional or reckless infliction of bodily injury route was also met. The jury convicted Goodson of domestic abuse assault which allows conviction if the "assault causes bodily injury or mental illness" and assault does not require an intentional or reckless element to cause injury. *Id.* §§ 708.2A(2)(*b*), 708.1 (describing three mens rea alternatives for assault). For this reason, the jury could not have relied on the domestic abuse assault charge to rise to the level necessary to establish first-degree burglary. We cannot determine for certain whether the jury found the requisite intent for intentional or reckless infliction of injury on another, and therefore cannot determine that the jury rested its first-degree burglary conviction on the intentional or reckless infliction of injury route rather than the sexual abuse route. Since it can only be clearly demonstrated that the jury relied on the sexual abuse route, the elements test is met because third-degree sexual abuse is a lesser included offense of first-degree burglary.

Since the elements test is met, we move to the second step to determine whether the legislature intended to double punish for first-degree burglary and third-degree sexual abuse. Third-degree sexual abuse, under Iowa Code section 709.4(2), is a class "C" felony, and first-degree burglary, under Iowa Code section 713.3(2), is a class "B" felony. Relying on *West*, when a defendant faces potential charges of third-degree sexual abuse and first-degree burglary, on its face, there would not be a reason to charge the defendant with the greater offense because an unenhanced third-degree sexual abuse charge clearly carries a lesser punishment than a first-degree burglary charge.

However, the sexual abuse statute permits enhancement of punishment based on repeated violations. *Id.* § 901A.2(3) ("[A] person convicted of a sexually predatory offense which is a felony, who has a prior

conviction for a sexually predatory offense, shall be sentenced to and shall serve twice the maximum period of incarceration for the offense, or twenty-five years, whichever is greater, notwithstanding any other provision of the Code to the contrary."). Therefore, there is a possibility that a subsequent sexual abuse offense could carry a greater punishment, and at a minimum would carry an equal punishment, to a first-degree burglary crime because class "B" felonies carry a maximum sentence of twenty-five years. *Compare* Iowa Code § 901A.2(3), *with id.* § 902.9(*b*). Since an enhanced sexual abuse conviction would carry the same or greater punishment as a first-degree burglary conviction, there may "never be a reason to charge a defendant with the greater offense" when the offender has committed a prior sexual abuse offense. *West*, 924 N.W.2d at 511. Meaning the legislature must have intended double punishment. Further, the language "notwithstanding any other provision of the Code to the contrary" from the enhancement statute, along with our past decisions holding that sentencing enhancements for OWI and possession of marijuana would be thwarted by merger, make merger in this case similarly inappropriate. *Johnson*, 750 N.W.2d at 23–24 (marijuana possession); *Rice*, 661 N.W.2d at 552 (OWI).

In addition, a lifetime special sentence under Iowa Code section 903B.1 applies to offenders convicted of sexual assault in the third degree but would not be imposed if that offense is merged into first-degree burglary. We have said that the lifetime special sentence is additional punishment. *See State v. Lathrop*, 781 N.W.2d 288, 295–97 (Iowa 2010).

We think the overall legislative scheme which includes substantive sexual offenses, sentence enhancements, and lifetime parole would be upset if the crime of sexual assault in the third degree merged with first-degree burglary. We therefore hold that the enhancement statute

demonstrates a legislative intent to double punish for first-degree burglary and third-degree sexual abuse and therefore the two offenses do not merge.

Our approach today is not inconsistent with *Anderson.* 565 N.W.2d 340. In that case, the question was whether first-degree burglary and assault with intent to commit sexual abuse resulting in bodily injury merged. *Id.* at 343–34. As in this case, we concluded that the *Blockburger* elements test had been met. *See id.*

But we did not have occasion in *Anderson* to consider a situation where merger of the crimes would adversely impact the availability of enhanced sentencing. At the time of *Anderson,* the crime of first-degree burglary was potentially subject to sentence enhancement where the crime had a sexual component. *Compare* Iowa Code § 901A.1 (1996) (listing first-degree burglary, amongst other crimes, as a sexually predatory offense and therefore eligible for sentencing enhancement when the commission of the crime also involved sexual abuse), *with* Iowa Code § 901A.1 (2016). In the *Anderson* case, then, merger did not negatively impact the availability of enhanced sentencing for sexual misconduct.

In this case, however, the crime of sexual abuse in the third degree, is subject to sentence enhancement, but first-degree burglary is not subject to the enhancement. Therefore, unlike in *Anderson,* merger of sexual abuse in the third degree with burglary in the first degree will defeat enhanced sentencing for sexual offenders. Under *Johnson* and *Rice,* merger does not occur when to do so would defeat the legislative policy behind a statutory enhancement of sentencing. And, we also consider the lifetime special sentence, a factor not considered in *Anderson.* Thus, under the statutes we confront today, we conclude the merger principles

of *Johnson* and *Rice,* and not the result of *Anderson* under a different statutory environment, control this case.

**C.  Judicial Recusal.**  Goodson argues that the trial judge, who also heard Goodson's posttrial motions, should have recused himself because he had improper contact with members of the jury prior to the verdict and because the judge was the prosecutor for Goodson's 1999 sexual abuse conviction.  The State argues that Goodson did not preserve error.

A recusal claim first raised at a motion for a new trial is too late. *State v. Biddle*, 652 N.W.2d 191, 198 (Iowa 2002).  Goodson was convicted in March 2018 and first filed a motion for new trial in April alleging impropriety because of the judge's contact with the jury.  Goodson filed a second motion for a new trial in August alleging impropriety because the judge prosecuted Goodson in 1999.  In the second motion, Goodson requested a new trial with a different judge presiding.  The request for recusal did not come until the second motion, let alone the first motion, which in any event a motion for a new trial is too late to first raise a claim for recusal.  Goodson's claim was not preserved.

Goodson did not raise the issue of judge recusal for the posttrial motions until appeal.  We find this issue was not preserved.

**D. Illegal Sentence.**  Goodson argues that the district court entered an illegal sentence because the sentence specified a duration for his sex offender registration.  He asks that the illegal portion of the sentence be reversed.  The State agrees that the district court's sentence is illegal and must be corrected.  As a result, we reverse the illegal portion of Goodson's sentence.

**IV.  Conclusion.**

For the foregoing reasons, we affirm Goodson's convictions, reverse the illegal portions of his sentence, and remand for resentencing.

**DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT AFFIRMED, SENTENCE AFFIRMED IN PART AND REVERSED IN PART, AND CASE REMANDED FOR RESENTENCING.**